REDMANN, Judge.
Plaintiff, who had obtained a judgment against Quentin Construction Corporation, seeks judgment for the amount of that judgment against Quentin’s two shareholders and another corporation they own. On plaintiff’s appeal from a dismissal on the merits, we reverse as to the other corporation.
Quentin contracted to pay plaintiff $4,153.27 to install carpet as part of some renovation work in an office building *7 owned by Executive Office Centers, Inc. Quentin and Executivi were both wholly owned by John A. Mmahat and Paul F. Dastugue, Jr.
The oral renovation contract between Quentin and Executive, as inescapably established through the individual defendants’ testimony, was that Executive would provide funds to Quentin to pay each item of cost of the renovation. This no-profit arrangement was a regular practice. On that basis we reverse as to Executive. Plaintiff is an intended third-party beneficiary of the Executive-Quentin contract within La.C.C. 1890. Quentin, with little or no money of its own because its shareholders-directors-officers so operated it, could not have paid for the work it was having done for their other corporation Executive (whether as “independent contractor” or as agent). Executive’s agreement to pay each item of cost was intended to provide the exact amount of money necessary to pay each “subcontractor” such as plaintiff, and plaintiff’s judgment against Quentin establishes its amount as a cost for which Executive is liable.
In respect to Quentin’s two shareholders, we can agree with plaintiff’s basic argument that incorporation allows one to reasonably limit, but not to escape, liability. Surely one may not legally acquire free carpet for one’s house (or for a friend’s house) by having one’s moneyless corporation buy it on credit and deliver it to the house. Whatever the technical explanation, the law of corporations, agency, unjust enrichment or tort will somehow hold one individually liable notwithstanding one’s observation of all the formal niceties of corpo-rateness.
But that is not our case. The corporation Quentin did have little operating cash, and its shareholders operated it not for its but for their own benefit by oral contracts to improve their own or their other corporation’s property at cost plus zero: and, in the case of the carpeting obtained from plaintiff for their other corporation’s benefit, they elected not pay or have the other corporation pay the cost. However, they withheld payment not as individuals but as directors or officers of their other corporation, and not tortiously but because of a dispute over workmanship (not here explained or at issue); and any unjust enrichment went not to them individually but to their other corporation (itself in law a person, and said to have over $12,000,000 assets). And if Quentin acted but as an agent, it was as Executive’s agent to improve Executive’s property, and not as agent of the individuals. (Nor, we mention, did either individual sign the written Quentin-plaintiff contract.)
Undercapitalization of the corporation Quentin is argued but not supported by the record. The corporation claimed, in its application for a contractor’s license at the time this dispute arose, $13,500 book value of tools and no debts save the $3,500 balance plaintiff claimed. That is not under-capitalization to a degree that would make the shareholders liable personally.
Finally, we note the argument that some evidence suggests that the final typed form of the minutes of annual shareholders’ meetings were not kept currently, from which plaintiff would infer that the meetings were not held and thus corporateness was not preserved and is not a defense to shareholder liability. But the testimony of the secretary is that the meetings were in fact held, as required by La.R.S. 12:73 A, and minutes kept on a legal pad until final transcription, which satisfies R.S. 12:103’s requirement that “[rjecords of the proceedings of the stockholders” be kept. (Plaintiff did not ask for, and defendants gave no evidence concerning, the minutes of directors’ meetings that § 103 also requires.)
Reversed in part; judgment for plaintiff against Executive Office Centers, Inc. for $3,153.27 with 25% attorney fees and legal interest from February 1,1977 and all costs.